United States District Court
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   LINDA PEDRAZA and FRANCISCO          No C 05-04977 VRW
    PEDRAZA, individually and on
10  behalf of their son MICHAEL
    PEDRAZA,

11          Plaintiffs,

12      v

13  ALAMEDA UNIFIED SCHOOL DISTRICT       ORDER
    and THE CALIFORNIA DEPARTMENT OF
14  EDUCATION, THE ALAMEDA BOARD OF
    EDUCATION, ALAN NISHINO,
15  individually and as
    Superintendent of the Alameda
16  Unified School District, ARDELLA
    DAILEY, as superintendent of the
17  Alameda Unified School District,
    DAVID WAX, individually and as
18  Special Education Director of the
    Alameda Unified School District,
19  CALIFORNIA DEPARTMENT OF
    EDUCATION and JACK O'CONNELL, as
20  State Superintendent of Public
    Instruction for the State of
21  California,

22          Defendants.
    _____/
23

24          On February 23, 2006, plaintiffs Linda and Francisco

25  Pedraza, individually and on behalf of their son Michael Pedraza,

26  filed a first amended complaint (Doc #10) against various

27  defendants for violations of the Individuals with Disabilities in

28  Education Act (IDEA), 20 USC §§ 1400, et seq; the Rehabilitation

**United States District Court**
For the Northern District of California

Act of 1973, 20 USC § 794; 42 USC § 1983; and for breach of contract.

Defendants are the Alameda Unified School District (AUSD); the AUSD Board of Education; Alan Nishino, individually and as former AUSD Superintendent; Ardella Dailey, individually and as current AUSD Superintendent; David Wax, individually and as former AUSD Special Education Director; Theresa Anderberg, individually and as current AUSD Special Education Director (local defendants); the California Department of Education (CDE); and Jack O'Connell, individually and as State Superintendent for Public Instruction (state defendants).

Both local and state defendants have filed separate Rule 12 motions to dismiss all claims against them for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim upon which relief can be granted.  Doc ##20, 29.

The court has heard oral arguments and reviewed memoranda from both sides.  For the reasons stated herein, defendants' motions to dismiss plaintiffs' first claim for violation of the IDEA, third claim for violation of the Rehabilitation Act of 1973, fifth claim for violation of § 1983 predicated upon a violation of the due process clause of the 14th Amendment and sixth claim for breach of contract are DENIED; defendants' motions to dismiss plaintiffs' second and fourth causes of action for violation of § 1983 are GRANTED.  Local defendants' motion to dismiss the individual defendants in their official capacities and the AUSD board is DENIED.  Defendants' motions to dismiss plaintiffs' claim for monetary damages under the IDEA and for punitive damages under § 504 of the Rehabilitation Act are GRANTED.

**United States District Court**
For the Northern District of California

I

Michael Pedraza was born on October 25, 1999 and later diagnosed with autism.  Doc #10, ¶ 5.  Michael's autism makes him eligible for a free appropriate public education (FAPE) under the IDEA.  Doc #10, ¶¶ 5, 19; 20 USC § 1401(3)(A).  As a resident of Alameda County, California, Michael is entitled to receive a FAPE from the AUSD.  Doc #10, ¶ 5.

The IDEA requires a team comprised of the student's parents and AUSD employees (including teachers and administrators) to meet and develop an individualized education program (IEP) for each school year.  20 USC § 1414(d); see Cal Educ Code § 56340.  An IEP summarizes the special education and related services which will make up the student's FAPE.  Id.

In October 2002, plaintiffs participated in an IEP meeting for the 2003-2004 school year (the only year at issue in this proceeding) at which time the AUSD outlined its proposal for Michael's FAPE.  Doc #10, ¶ 19.  Plaintiffs disagreed with the AUSD's proposal and requested a second IEP meeting.  Id.

While it is unclear from the record whether a second IEP meeting took place, plaintiffs retained counsel in July 2003 and initiated a due process proceeding to resolve issues relating to the AUSD's offer of FAPE for the 2003-2004 school year.  Doc #10, ¶¶ 19-20; see also <u>Michael Pedraza v Alameda Unified Sch Dist</u>, SN03-01426.  Before the hearing took place, plaintiffs and the AUSD agreed to mediate and subsequently entered into a "compromise and release agreement" purporting to resolve the issues raised in the due process complaint.  Doc #10, ¶ 21, Ex 2 at 5.

United States District Court
For the Northern District of California

1    Specifically, the AUSD agreed to provide clinical therapy
2  and speech programs and to reimburse plaintiffs for Michael's pre-
3  school placement, the costs of a paraprofessional aide and for
4  occupational therapy services.  Doc #10, Ex 2 at 1-3.  The
5  agreement also provided that failure to perform any provision would
6  be considered a breach of the entire agreement whereby "the
7  breaching party shall forfeit all consideration promised or
8  received."  Doc #10, Ex 2 at 7.

9    The 2003-2004 school year commenced and soon thereafter,
10 the AUSD breached the agreement by failing to (1) provide "parent
11 reimbursement for services" and (2) "contract directly with service
12 providers" to "secure agreed upon related services" for Michael.
13 Doc #10, ¶ 22.  Plaintiffs then filed a complaint with the CDE
14 setting forth the AUSD's alleged "failure to fulfill its
15 obligations under the settlement agreement and [the] IDEA."  Doc
16 #10, ¶ 24, Ex 3 at 2.  On December 1, 2003, the CDE issued a report
17 finding the AUSD "in compliance regarding implementation of [the
18 July 2003] mediation agreement."  Doc #10, Ex 3 at 2.

19   Plaintiffs requested reconsideration of the CDE's
20 findings.  Doc #10, ¶ 26, Ex 3 at 1, 6.  The CDE granted their
21 request and on May 10, 2004 issued an amended report, this time
22 finding the AUSD "out of compliance."  Id.  The CDE directed the
23 AUSD to arrange an IEP meeting to evaluate Michael's program and
24 found that "if dispute resolution and/or mediation [did] not result
25 in a settlement agreement and appropriate program for [Michael],
26 the [AUSD] shall ensure FAPE by initiating due process prior to
27 7/15/04."  Doc #10, Ex 3 at 6.  An IEP meeting took place, but no
28 agreement was reached regarding the 2003-2004 dispute, and the AUSD

4

failed to initiate a due process proceeding as required by the CDE's mandate.  Doc #10, ¶¶ 27-28.

In November 2004, plaintiffs notified the CDE that the AUSD remained out of compliance and requested a further investigation.  Doc #10, ¶ 28.  In a letter (not addressed to plaintiffs) dated February 8, 2005, the CDE stated:

> The file regarding the [Pedraza] case has been carefully reviewed and completed.  As appropriate, all required corrective actions have been received and duly noted.  Therefore this case is now closed.

Doc #32, Ex A.

In August 2005, plaintiffs initiated a second due process hearing alleging, inter alia, that the AUSD denied Michael a FAPE for the 2003-2004 school year by failing to abide by the settlement agreement.  Doc #10, ¶ 31.  In September 2005, the Office of Administrative Hearings (OAH) dismissed the 2003-2004 claim for lack of subject matter jurisdiction stating:

> While petitioner has artfully drafted the due process complaint to include a denial of FAPE during the [2003-2004] school year covered by the mediated settlement agreement and the CDE investigation, the theory remains that [the AUSD] has violated [the IDEA] by failing to live up to [its] obligations under the mediated settlement agreement.  Violations of mediated settlement agreements are clearly within the purview of CDE.  Petitioner has recourse other than through OAH, including filing suit in state or federal court, when a state agency is not fulfilling its legal obligations.

Doc #10, ¶ 32, Ex 1 at 2.  Subsequently, plaintiffs filed their original and first amended complaints with this court seeking injunctive relief and damages for the alleged denial of FAPE for the 2003-2004 school year.  Doc ##1, 10.

United States District Court

For the Northern District of California

1

II

2              Plaintiffs' FAC asserts six causes of action, all arising

3      out of defendants' alleged breach of the IDEA.  Doc #10.

4      Plaintiffs seek damages pursuant to: (1) the IDEA, 20 USC §§ 1400

5      et seq; (2) 42 USC § 1983 for violation of the IDEA; (3) section

6      504 of the Rehabilitation Act of 1973, 20 USC § 794; (4) 42 USC §

7      1983 for violation of section 504 of the Rehabilitation Act; (5) 42

8      USC § 1983 for violation of the due process clause of the 14th

9      Amendment of the United States Constitution; and (6) breach of

10     contract.  Id.

11             Plaintiffs assert the court has subject matter

12     jurisdiction over their first five claims pursuant to 28 USC §

13     1331, and supplemental jurisdiction over their sixth claim subject

14     to 20 USC § 1367.  Doc #10, ¶¶ 1-2.  Defendants argue that this

15     court lacks subject matter jurisdiction because plaintiffs' claims

16     arise out of the settlement agreement mediated under the IDEA and

17     that the IDEA did not provide a right of enforcement in federal

18     court for such agreements until 2005.  Doc #23, 6:14-9:6; Doc #30,

19     5:22-8:8.

20             In a facial attack on subject matter jurisdiction, "the

21     court considers the allegations in plaintiffs' complaint (together

22     with documents attached to the complaint, judicially noticed facts

23     and any undisputed facts evidenced in the record) in the light most

24     favorable to plaintiff."  William W Schwarzer, A Wallace Tashima,

25     and James M Wagstaffe, Federal Civil Procedure Before Trial, 9:78

26     (Rutter Group, 2006).  Because federal courts are those of limited

27     jurisdiction, it is presumed that the court lacks jurisdiction in a

28     particular case "unless the contrary affirmatively appears" in

plaintiffs' complaint.  <u>Kokkonen v Guardian Life Insurance Co of America</u>, 511 US 375, 377 (1994); <u>Stock West, Inc v Confederated Tribes of the Colville Reservation</u>, 873 F 2d 1221, 1225 (9th Cir 1989) (citing <u>California ex rel Younger v Andrus</u>, 608 F 2d 1247, 1249 (9th Cir 1979)).

Jurisdiction over several of plaintiffs' claims is contingent upon the court having jurisdiction over plaintiffs' cause of action under the IDEA (claim #1).  Accordingly, the court will first address the issue whether plaintiffs have established federal question jurisdiction over their IDEA claim.

A

Plaintiffs assert that the court may exercise federal question jurisdiction over their IDEA claim based on two theories: (1) defendants violated the IDEA by failing to comply (or in the case of state defendants, failing to enforce compliance) with the settlement agreement; and (2) the AUSD's failure to provide the services and reimbursement agreed upon in the settlement agreement resulted in a denial of FAPE, which constitutes a violation of the IDEA.  Doc #39, 10:4-12:7.  While the court cannot exercise subject matter jurisdiction based on breach of the settlement agreement, it may do so based on the alleged violation of the IDEA.

The current version of 20 USC § 1415(e), which took effect on July 1, 2005, provides:

> In the case that a resolution is reached to resolve the complaint through the [IDEA's] mediation process, the parties shall execute a legally binding agreement that sets forth such resolution and that * * * is enforceable in any State court of competent jurisdiction or in a district court of the United States.

*(left margin, vertical text)* **United States District Court**  For the Northern District of California

20 USC § 1415(e)(2)(F)(iii); Individuals with Disabilities Education Improvement Act of 2004, Pub L No 108-446.  Plaintiffs argue that, although they entered into the settlement agreement two years before the effective date of the act, the applicable statute is retroactive and thus federal question jurisdiction exists.  See Doc #58.  In support of this contention, plaintiffs point to CT v Vacaville Unified Sch Dist, Slip Copy, 2006 WL 2092613 (ED Cal 2006), in which the court found that an alleged breach of a May 2004 mediated settlement agreement conferred federal jurisdiction under § 1415(e)(2)(F)(iii).  In CT, however, the parties failed to raise and the court did not address the issue of retroactivity.  Thus, even if CT were binding upon this court, it is not applicable to the issue of retroactivity.  Moreover, defendants argue, without opposition, that nothing in the 2004 amendments "suggests that courts may retroactively apply any of the amendments, let alone specific subsections."  Doc #30, 6:21-23; Doc #23, 7:14-17.  Because the parties mediated the agreement at issue two years prior to the effective date of the above statute, the court does not have jurisdiction to enforce the agreement.  For these reasons, federal jurisdiction cannot be predicated on breach of the 2003 agreement.  Subject matter jurisdiction over the IDEA claim, therefore, rests solely on plaintiffs' second theory: that a breach of the agreement constitutes a denial of FAPE and a violation of the IDEA.

In the 2003 agreement, the parties "acknowledged that the services the District agreed to provide constituted a FAPE for the 2003-2004 school year."  Doc #40, 10:13-14; Doc #10, Ex 2 at 5.  Plaintiffs argue that when the AUSD failed to provide the services outlined in the settlement agreement, it effectively denied Michael

a FAPE for that school year.  Doc #10, ¶¶ 22, 45.  According to
plaintiffs, that denial of a FAPE constitutes a violation of the
IDEA itself, and because defendants violated the IDEA, federal
question jurisdiction exists.  Id.

       Taking plaintiffs' allegations as true, Michael was
indeed denied a FAPE for the 2003-2004 school year, and failure to
provide a FAPE, in any form, constitutes a violation of the IDEA.
20 USC §§ 1400, et seq.  Accordingly, the court may exercise
subject matter jurisdiction provided that plaintiffs have either
complied with the IDEA's exhaustion requirement or demonstrated
that doing so would be futile.  20 USC § 1415(l); see also Robb v
Bethel Sch Dist 403, 308 F3d 1047, 1048 (9th Cir 2002); Hoeft v
Tucson Unified Sch Dist, 967 F 2d 1298, 1302 (9th Cir 1992).


                                B

       The IDEA requires that all of the administrative
procedures set forth in 20 USC § 1415 must be exhausted before
filing a civil action in federal court.  20 USC § 1415(l); see also
Hoeft, 967 F2d at 1302.

       The IDEA's administrative procedures, detailed in 20 USC
§ 1415, begin with the filing of a parental complaint.  20 USC
§ 1415(b)(6).  Upon receipt of a complaint, the local educational
agency is required to convene an IEP meeting to discuss the issues
and attempt resolution.  20 USC § 1415(f)(1)(B)(i).  If the issues
are not resolved, parents may either agree to mediation or initiate
an impartial due process hearing.  20 USC §§ 1415(e), 1415(f)(1)(A)
and (f)(1)(B)(ii).  If the parties agree to mediation, they must
enter into a settlement agreement, which as of July 1, 2005, is

**United States District Court**
For the Northern District of California

enforceable in federal court.  20 USC § 1415(e)(2)(F).  If the parties go forward with the due process hearing, the hearing officer considers the evidence and determines whether the child in question received a FAPE.  20 USC § 1415(f).  If parents are still aggrieved, they may "bring a civil action * * * in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 USC § 1415(i).

The Ninth Circuit has not yet addressed whether the IDEA's exhaustion requirement is satisfied when parties enter into a mediated settlement agreement.  The First Circuit, however, has addressed the issue of what constitutes exhaustion under the IDEA and found that mediation is insufficient.  <u>Weber v Cranston School Committee</u>, 212 F 3d 41, 53 (1st Cir 2000); accord <u>Tyler B v San Antonio Elementary School District</u>, 253 F Supp 2d 1111, 1118 (ND Cal 2003); see also James R Cohen and Peter N Thompson, <u>Disputing Irony: A Systematic Look at Litigation about Mediation</u>, 11 Harv Negot L Rev 43, 131 (2006).  In the absence of Ninth Circuit precedent, the court adopts the First Circuit's interpretation of the IDEA's exhaustion requirement and finds that this requirement is <u>not</u> satisfied when parties enter into a mediated settlement agreement.  Pursuant to both the IDEA and California state law, there must be, at the very least, a state-level impartial due process hearing before the aggrieved party can file a civil action in federal court.  See 20 USC § 1415(i)(2); Cal Educ Code § 56501.

Here, the parties agreed to waive the due process hearing and instead, utilized the IDEA's mediation process.  Doc #10, ¶ 21. While plaintiffs ultimately appealed to the CDE, they did so based

on denial of FAPE under the 2003 mediated settlement agreement, not based on the findings of a due process hearing officer.  Doc #10, Ex 3 at 2.  Because plaintiffs agreed to mediation and did not participate in a due process hearing, plaintiffs have not exhausted their administrative remedies under the IDEA.

Application of the IDEA's exhaustion requirement, however, is not absolute.  <u>Hoeft</u>, 967 F 2d at 1303.  The Ninth Circuit has recognized an exception "based both on general exhaustion principles and on the legislative history of the IDEA" and held that where resort to the administrative procedures set forth in 20 USC § 1415 would be futile or would provide an inadequate remedy, the exhaustion requirement is excused.  Id.  In general, futility will be found when resort to further administrative process would serve no useful purpose (i e, not serve the policies behind the exhaustion requirement).  Id; see also Jacob A Stein, Glenn A Mitchell, and Basil J Mezines, 5-49 <u>Administrative Law</u> § 49.02 (Matthew Bender 2006).  When resort to further administrative remedies will not serve any useful purpose, the doctrine of futility excuses the IDEA's exhaustion requirement and provides federal courts jurisdiction over a plaintiff's complaint for violation of the IDEA.  Id.

Viewing plaintiffs allegations in the light most favorable to them, their prior attempts at administrative resolution provide a near perfect example of futility.  After the AUSD's alleged breach of the settlement agreement, plaintiffs filed a complaint directly with the CDE.  Doc #10, ¶ 24.  The CDE ultimately found the AUSD out of compliance, yet did nothing to enforce the AUSD's obligations under the agreement.  Doc #10, ¶26;

**United States District Court**
For the Northern District of California

1   Doc #32, Ex A.  Plaintiffs cannot file another complaint with the

2   CDE since it has already deemed the case "closed" and, under 20 USC

3   § 1415, decisions rendered by a state educational agency are final.

4          Once the CDE deemed the case closed, plaintiffs sought a

5   due process hearing claiming that the AUSD denied Michael a FAPE,

6   but the OAH refused to adjudicate plaintiffs' allegations.  Doc

7   #10, ¶¶ 31,32; Doc #10, Ex 1 at 2.  Despite plaintiffs' allegation

8   of denial of a FAPE, and not merely a breach of the 2003 agreement,

9   the OAH dismissed the claim for lack of subject matter jurisdiction

10  finding that "[v]iolations of mediated settlement agreements are

11  clearly within the purview of CDE."  Doc #10, Ex 1 at 2.

12  Plaintiffs cannot seek reconsideration of the OAH's denial of

13  jurisdiction because issues decided by the OAH are considered final

14  under Cal Educ Code § 56505(h).  Moreover, it would be futile to

15  send plaintiffs back to the CDE since the department has already

16  issued a final decision and refused to take any action to enforce

17  the AUSD's compliance with the IDEA.

18         In <u>Hoeft</u>, the Ninth Circuit discussed the policy behind

19  the IDEA's exhaustion requirement:

20                 The policies underlying the IDEA's
                   administrative procedures reflect both
21                 general principles of administrative law and
                   the educational philosophy of the IDEA.   The
22                 exhaustion doctrine embodies the notion that
                   agencies, not the courts, ought to have
23                 primary responsibility for the programs that
                   Congress has charged them to administer.
24                 The IDEA's exhaustion requirement also
                   recognizes the traditionally strong state and
25                 local interest in education, as reflected in
                   the statute's emphasis on state and local
26                 responsibility.   * * * Exhaustion of the
                   administrative process allows for the
27                 exercise of discretion and educational
                   expertise by state and local agencies,
28                 affords full exploration of technical
                   educational issues, furthers development of a

                                    12

United States District Court
For the Northern District of California

1   complete factual record, and promotes
    judicial efficiency by giving these agencies
2   the first opportunity to correct shortcomings
    in their educational programs for disabled
3   children.

4   967 F2d at 1303 (internal citations and quotations omitted).   These

5   policies cannot be furthered when state administrative agencies

6   refuse to take action.   The state agencies' refusals in this case

7   are flagrant: the CDE refused to enforce compliance even after

8   finding the district in breach.   And the OAH refused to accept

9   jurisdiction despite allegations that AUSD denied FAPE to Michael

10  Pedraza.

11      Requiring plaintiffs to seek additional administrative

12  hearings would not serve the policies behind the IDEA's exhaustion

13  requirement.   While a complete factual record would greatly

14  facilitate this court's review, further administrative proceedings

15  would not likely produce a meaningful basis for that review.

16      Because plaintiff has pled a denial of FAPE in violation

17  of the IDEA and because further exhaustion of the administrative

18  remedies set forth in 20 USC § 1415 would be futile, the court has

19  federal question jurisdiction over plaintiffs' IDEA claim pursuant

20  to 28 USC § 1331.   Accordingly, defendants motion to dismiss

21  plaintiffs' first cause of action is DENIED.

22

23                                III

24      Plaintiffs' remaining causes of action are all, in some

25  way, predicated upon plaintiffs' first claim — that defendants

26  violated the "intent and purpose of the IDEA" when they denied

27  Michael a FAPE for the 2003-2004 school year.   See Doc #10 at ¶¶

28  43-48.   Because the court has concluded that it possesses subject

                                 13

United States District Court
For the Northern District of California

1   matter jurisdiction over plaintiffs' IDEA claim, it may also

2   exercise jurisdiction over plaintiffs' remaining claims (Doc #10,

3   ¶¶ 49-79) pursuant to 28 USC §§ 1331 and 1367.

4           The court may exercise federal question jurisdiction over

5   claims two (violation of 42 USC § 1983 for violation of IDEA, 20

6   USC §§ 1400, et seq), three (violation of § 504 of the

7   Rehabilitation Act of 1973, 20 USC § 794), four (violation of 42

8   USC § 1983 for violation of § 504 of the Rehabilitation Act) and

9   five (violation of 42 USC § 1983 for violation of the due process

10  clause of the Fourteenth Amendment to the United States

11  Constitution) because each claim arises under "the Constitution,

12  laws, or treaties of the United States." 20 USC § 1331; see also

13  Doc #10 at ¶¶ 49-74. Additionally, the court may exercise

14  supplemental jurisdiction over plaintiffs' sixth cause of action

15  for breach of contract (Doc #10, ¶¶ 75-79) because this claim is so

16  related to defendants' alleged violation of the IDEA that it forms

17  part of the same case or controversy. 28 USC § 1367.

18

19                                    IV

20          Having addressed jurisdiction, it is now proper to

21  address defendants' alternative theory of dismissal. Pursuant to

22  Rule 12(b)(6), defendants argue that plaintiffs have failed to

23  state a claim upon which relief can be granted for claims one, two

24  and four. Doc #23, 6:14-9:6, 14:21-19:3; Doc #30, 12:20-13:10.

25          A Rule 12(b)(6) motion will be granted "only where there

26  is either a 'lack of a cognizable legal theory' or 'the absence of

27  sufficient facts alleged under a cognizable legal theory.'"

28  Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before

                                    14

<u>Trial</u>, Chapter 9:187 (Rutter Group, 2006); <u>Balistreri v Pacifica Police Department</u>, 901 F2d 696, 699 (9th Cir 1990).  "In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief."  Id; <u>Cahill v Liberty Mutual Ins Co</u>, 80 F3d 336, 337-38 (9th Cir 1996).

Local and state defendants argue that plaintiffs' first (violation of IDEA) and fourth (violation of section 1983 predicated upon section 504 of the Rehabilitation Act) causes of action are deficient.  Doc #23, 6:14-9:6, 18:7-19:3; Doc #30, 12:20-13:10.  In addition, local defendants argue that plaintiffs' second cause of action (violation of section 1983 predicated upon the IDEA) fails to state a claim.  Doc #23, 14:21-17:10.


A

Plaintiffs first claim for relief under the IDEA is not deficient.  Under Rule 12(b)(6), all material facts pled in plaintiffs complaint are taken as true.   As discussed above, plaintiffs' complaint sufficiently alleges defendants' breach of the IDEA.  Accordingly, defendants' motion to dismiss plaintiffs' first cause of action (Doc #10, ¶¶43-48) is DENIED.


B

Local defendants argue that both of plaintiffs' § 1983 causes of action fail to state a claim upon which relief can be granted under Rule 12(b)(6).  Doc #23, 14:21-19:3.  State

15

**United States District Court**
For the Northern District of California

1   defendants join in the motion as to claim number four – plaintiffs'

2   § 1983 action predicated upon § 504 of the Rehabilitation Act.  Doc

3   #30, 12:20-13:10.  Although § 1983 allows individuals to enforce

4   rights conferred by federal laws, "[a]n alleged violation of

5   federal law may not be vindicated under § 1983 * * * where * * *

6   Congress has foreclosed citizen enforcement in the enactment

7   itself, either explicitly, or implicitly by imbuing it with its own

8   comprehensive remedial scheme."  <u>Vinson v Thomas</u>, 288 F3d 1145,

9   1155 (9th Cir 2002).

10      Defendants point out, and plaintiffs do not dispute, that

11  § 504 of the Rehabilitation Act contains a comprehensive

12  enforcement scheme that "foreclose[s] resort to the more general

13  enforcement provisions of section 1983."  Id at 156 (internal

14  quotations omitted); Doc #23, 18:7-19:3; Doc #30, 12:20-13:10.

15  Accordingly, plaintiffs' fourth cause of action for relief under §

16  1983 predicated on a violation of § 504 of the Rehabilitation Act

17  is DISMISSED with prejudice.

18      Plaintiffs', however, do argue that § 1983 actions can be

19  predicated upon violations of the IDEA.  Doc #39, 16:1-19:9.

20  Defendants contend that the Supreme Court's holding in <u>Smith v</u>

21  <u>Robinson</u>, 468 US 992 (1984), specifically classifies the IDEA as a

22  federal statute with a comprehensive enforcement scheme, thus

23  precluding § 1983 liability.  Doc #23, 15:7-14.

24      Plaintiffs' argument is based on Congress' 1986 amendment

25  to the IDEA, 20 USC § 1415 the current version of which states, in

26  pertinent part:

27          Nothing in this chapter shall be construed to
            restrict or limit the rights, procedures, and
28          remedies available under the Constitution,
            the Americans with Disabilities Act of 1990

16

United States District Court
For the Northern District of California

1
2
3
4
5
6

> [42 U.S.C.A. § 12101 et seq.], title V of the
> Rehabilitation Act of 1973 [29 U.S.C.A. § 791
> et seq.], or other Federal laws protecting
> the rights of children with disabilities,
> except that before the filing of a civil
> action under such laws seeking relief that is
> also available under this subchapter, the
> procedures under subsections (f) and (g) of
> this section shall be exhausted to the same
> extent as would be required had the action
> been brought under this subchapter.

7  20 USC § 1415(l).  Plaintiffs argue that, with this amendment,

8  Congress specifically authorized § 1983 actions predicated on the

9  IDEA.  Doc #39 at 16-19.  This court, however, is not persuaded by

10  plaintiffs' argument.

11       As defendants point out, "section 1983 is not among the

12  statutes specifically named by Congress in § 1415(l) [nor] is it a

13  statute 'protecting the rights of children with disabilities.'"

14  Alex G v Bd of Trustees, 332 F Supp 2d 1315, 1317 (ED Cal 2004).

15  Furthermore, although the Ninth Circuit has not specifically

16  addressed whether § 1983 liability for violations of the IDEA is

17  precluded, several sister circuits have found that the IDEA's

18  comprehensive enforcement scheme, even in light of § 1415(l),

19  precludes § 1983 liability predicated upon the IDEA.  Padilla v

20  School Dist No 1, 233 F3d 1268, 1272-74 (10th Cir 2000); Sellers by

21  Sellers v School Bd, 141 F3d 524, 529-30 (4th Cir 1998); Diaz-

22  Fonseca v Puerto Rico, 451 F3d 13, 28-29 (1st Cir 2006).

23       In the absence of Ninth Circuit precedent, this court

24  adopts the Tenth, Fourth and First Circuits' interpretation and

25  finds that the IDEA's comprehensive enforcement scheme precludes

26  relief under section 1983.  Accordingly, plaintiffs' second claim

27  for relief is DISMISSED with prejudice.

28

V

Local defendants move to dismiss each of plaintiffs'
claims against the individual defendants in their official
capacities arguing that it is duplicative and unnecessary because
"[a] suit against a government official in her 'official capacity'
is, in practice, the same as a suit against the public entity for
which the officer is an agent." Doc #23, 17:14-15. Local
defendants proffer a similar argument for plaintiffs' claims
against the AUSD board urging that a "finding of liability against
the [b]oard is simply a redundant finding of liability against the
[d]istrict." Doc #23, 17:26-27.

These arguments are misplaced. It is well settled that
an injured party may obtain prospective injunctive relief against
individual defendants in their official capacities. Ex parte
Young, 209 US 123, 159-60 (1908); Natural Resources Defense Council
v California DOT, 96 F3d 420, 422 (9th Cir 1996). While it may be
inappropriate for individuals to be held liable for damages for
acts carried out in their official capacity, plaintiffs may still
seek prospective injunctive relief from the individual defendants
in their official capacities, and it would be inappropriate to
dismiss them as defendants.

With respect to the AUSD board, it is not clear whether
the defendants seek to have all causes of action, or only
plaintiffs' third and fourth causes of action, against the board
dismissed. In any event, the defendants have not sufficiently
articulated the relationship between the board and the AUSD for
this court to say with certainty that the board itself should be
dismissed. Because defendants' only argument is that the parties

are "duplicative," the court concludes that defendants can suffer
no prejudice from keeping the board as a named defendant, and the
court declines to dismiss the board.

Accordingly, local defendants' motion to dismiss the
individual defendants and the board on the grounds that plaintiffs'
claims are duplicative and unnecessary is DENIED.

VI

Defendants concede that, under the IDEA, plaintiffs could
obtain compensatory education, injunctive relief, attorney's fees
and costs and reimbursement for expenses related to Michael's
education.  Doc #23, 19:25-20:3; Doc #30, 13:15-18.  Defendants
argue, however, that beyond the above enumerated "equitable"
relief, plaintiffs cannot recover "monetary damages" under the
IDEA, i e, compensatory awards for emotional and physical harm, and
punitive awards.  Doc #23, 20:15-18; Doc #30, 13:18-21.  Defendants
further assert that plaintiffs cannot recover punitive damages
under § 504 of the Rehabilitation Act.  Doc #23, 20:25-8; Doc #30,
14:24-15:1.

Despite disagreement among the circuits, this court is
persuaded that, in the Ninth Circuit, monetary damages are not
available as a remedy under the IDEA.  Primarily, plaintiffs argue
that the line of Ninth Circuit cases holding that monetary damages
are not available under the IDEA rests on the erroneous presumption
that a statute conferring such a remedy must be accompanied by
explicit congressional intent to do so.  See Mountain View-Los
Altos Union High Sch Dist v Sharron BH, 709 F2d 28, 30 (9th Cir
1983).  The Ninth Circuit's rationale, according to plaintiffs, is

erroneous in light of the Supreme Court's holding in <u>Franklin v</u>
<u>Gwinnett County Pub Sch Dist</u>, that "absent clear direction to the
contrary by Congress," there is a presumption of availability of
all appropriate remedies.  503 US 60, 73 (1992) (finding a right to
monetary damages under Title IX of the Education Amendments of 1972
(20 USC §§ 1681-88)).  Plaintiffs accordingly assert that 20 USC §
1415(i)(2)(c)(iii), which states that a district court may "grant
such relief as the court determines appropriate" in an IDEA case,
must be construed broadly in favor of the availability of monetary
damages.  Doc #39, 21:3-6.  Plaintiffs' argument goes too far.

First, although the Ninth Circuit has not explicitly
addressed <u>Franklin</u>'s effect on the denial of monetary damages under
the IDEA, since that decision, the court has reaffirmed that
monetary damages are not available.  See <u>Robb v Bethel Sch Dist</u>
<u>403</u>, 308 F3d 1047 (9th Cir 2002); <u>Witte v Clark County Sch Dist</u>,
197 F3d 1271, 1275 (9th Cir 1999).

Second, the Supreme Court clarified <u>Franklin</u> in <u>Gebser v</u>
<u>Lago Vista Indep Sch Dist</u>, holding that the general presumption of
available remedies "'yields where necessary to carry out the intent
of Congress or to avoid frustrating the purposes of the statute
involved.'" 524 US 274, 285 (1998) (citing <u>Guardians Assn v Civ</u>
<u>Serv Comm of New York City</u>, 463 US 582, 595 (1983).  The Supreme
Court has specifically addressed the purpose of the IDEA in light
of the statute's authorization for courts to order all "appropriate
relief."  In <u>School Comm of the Town of Burlington v Dept of Educ</u>
<u>Mass</u>, 471 US 359, 368-69 (1985), the Supreme Court specifically
interpreted the meaning of "appropriate relief" under the IDEA's
preceding statute finding that relief must be appropriate in light

United States District Court
For the Northern District of California

1  of the purpose of the act, which is to provide disabled students

2  with a free appropriate public education.  Thus, the Court found

3  that parents can be reimbursed for educational services a school

4  district illegally refuses to provide, but noted that such

5  reimbursements are not considered "damages."  Id at 370.

6  Plaintiffs have not explained how monetary damages unrelated to

7  Michael's education would serve to provide him with a "free

8  appropriate public education."  Furthermore, compensatory and

9  punitive damages would frustrate the limited purposes of the act by

10  essentially converting it into a tort claim against educational

11  agencies.

12          Accordingly, this court is persuaded by other circuits,

13  which hold that the complicated administrative scheme created by

14  the IDEA demonstrates that Congress did not intend to provide

15  federal court claimants with all available remedies.  See Sellers

16  by Sellers v Sch Bd, 141 F3d 524, 527 n3 (4th Cir 1998); Diaz-

17  Fonseca v Puerto Rico, 451 F3d 13, 28-29 (1st Cir 2006); Polera v

18  Bd of Educ, 288 F3d 478, 486 (2d Cir 2002).  Indeed, it would make

19  little sense to provide a comprehensive administrative scheme for

20  the limited purpose of ensuring a "free appropriate public

21  education," only to permit virtually unlimited liability on review

22  in the district court.  Thus, plaintiffs' claims for monetary

23  damages under their IDEA cause of action (claim #1) are DISMISSED.

24  Plaintiffs, however, may still obtain reimbursement for educational

25  expenses, compensatory education, injunctive relief and attorneys

26  fees and costs under their IDEA claim.

27          Defendants also urge the court to dismiss plaintiffs'

28  claims for punitive damages sought under the Rehabilitation Act

since "parties cannot collect punitive damages based on violations of [s]ection 504 of the Rehabilitation Act." Doc #23, 20:25-8; Doc #30, 14:24-15:1; <u>Barnes v Gorsman</u>, 536 US 181, 189-190 (2002). Plaintiffs do not dispute this. Accordingly, plaintiffs' prayer for punitive damages under the Rehabilitation Act is DISMISSED.

                                 VII

     For the above stated reasons, plaintiffs' § 1983 claims predicated on a violation of the IDEA (claim #2) and on a violation of section 504 of the Rehabilitation Act (claim #4) are DISMISSED with prejudice.

     Defendants' motions to dismiss plaintiffs' first, third, fifth, and sixth causes of action are DENIED.

     Local defendants' motion to dismiss individuals acting in their official capacities and the AUSD board is DENIED.

     Plaintiffs' claim for compensatory and punitive damages under the IDEA is DISMISSED with prejudice. Plaintiffs' claim for punitive damages under section 504 of the Rehabilitation Act is also DISMISSED with prejudice.

     The court is in receipt of plaintiffs' March 12, 2007 letter concerning: confusion over a July 25, 2006 minute order directing plaintiffs to amend their complaint by September 2006 (Doc #57); confusion over the status of mediation; and access to the case file.

     The order directing plaintiffs to amend their complaint can be disregarded. The court's recollection is that, at the July 2006 case management conference, the parties discussed the

United States District Court

For the Northern District of California

possibility of amending the complaint depending on the outcome of
the motions to dismiss.  In light of the above ruling on these
motions, the court finds that amending the complaint is
unnecessary.

        The parties shall appear for a case management conference
on May 8, 2007, at 9:00 am.

        IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Judge

United States District Court
For the Northern District of California