1

2

3                  IN THE UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8    LINDA PEDRAZA, et al.,                No. 05-04977 CW

9              Plaintiffs,                 ORDER GRANTING
                                           DEFENDANTS' MOTIONS
10        v.                               FOR JUDGMENT ON THE
                                           PLEADINGS AND FOR
11   ALAMEDA UNIFIED SCHOOL DISTRICT, et   SUMMARY JUDGMENT AND
     al.,                                  GRANTING MOTION FOR
12                                         SUMMARY JUDGMENT ON
              Defendants.                  COUNTER-CLAIMS
13   _____/     (Docket Nos. 222 and
                                           223)
14

15

16        Defendants California Department of Education (CDE) and the

17   State Superintendent of Public Instruction (together, State

18   Defendants) move for judgment on the pleadings on the claim that

19   they violated the Individuals with Disabilities Education Act

20   (IDEA), 20 U.S.C. §§ 1400 et seq., and Defendants Alameda Unified

21   School District (AUSD) and Alameda Unified School District Board of

22   Education (together, the District) move for summary judgment on the

23   claims that they violated the IDEA and breached a 2003 Settlement

24   Agreement.  The District also moves for summary judgment of

25   liability on its counter-claims against Linda and Francisco Pedraza

26   for breach of the 2003 Settlement Agreement and for express

27   indemnity under a provision of that Agreement.  Plaintiff Linda

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Pedraza has filed oppositions and Defendants have filed replies.[1]
The matters were taken under submission on the papers.  Having
considered all the papers filed by the parties, the Court grants
State Defendants' motion for judgment on the pleadings and the
District's motion for summary judgment on Linda Pedraza's claims.
The Court also grants summary judgment of liability on the
District's counter-claims against the Pedrazas.

PROCEDURAL BACKGROUND

On December 1, 2005, Plaintiffs Linda and Francisco Pedraza
individually and as guardians ad litem of their son MP, filed the
original complaint in this action and, on February 23, 2006, filed
their First Amended Complaint (1AC) which is the subject of State
Defendants' motion for judgment on the pleadings.  The 1AC alleged
claims against State Defendants, the District and individuals who
worked for the District.  Pursuant to the Court's orders, all
claims against these individual defendants were dismissed and most
of the claims against the District were dismissed.  The remaining
claims against the District were those for a breach of the 2003
Settlement Agreement regarding MP's individual education plan (IEP)
for the 2003-04 school year (SY) and for violation of the IDEA for
the 2003-04 SY based on the breach of the 2003 Settlement
Agreement.  All claims against State Defendants were dismissed with
the exception of a claim for violation of the IDEA based upon State

_____

[1]The complaint was originally filed by Linda and Francisco
Pedraza, husband and wife, and their minor child, MP.  Linda
Pedraza is the only remaining Plaintiff.  Counter-Defendant
Francisco Pedraza did not oppose the District's motion for summary
judgment of liability on its counter-claims against him.

2

United States District Court
For the Northern District of California

Defendants' failure to enforce its own May 10, 2004 Compliance Reconsideration Report which had found that the District had breached certain provisions of the 2003 Settlement Agreement.

The District asserted six counter-claims against the Pedrazas: (1) breach of contract based on the Pedrazas' failure to perform their obligations under the 2003 Settlement Agreement; (2) express indemnity based on a provision in the 2003 Settlement Agreement; (3) implied indemnity; (4) enforcement of a 2007 mediated final agreement; (5) fraud; and (6) recovery of attorneys' fees.  In an October 19, 2009 Order on the Pedrazas' motion to dismiss the counter-claims, the Court dismissed the third counter-claim for implied indemnity and found the allegations sufficient to state all other claims.

Ms. Pedraza filed two other cases, C 07-4781 and C 07-5989, asserting claims that MP was denied a FAPE as required by the IDEA.[2]  On December 18, 2007, the Court issued an order consolidating these cases into C 05-4977 CW.  (Docket No. 17).  On September 30, 2009, the Court issued an order dismissing all claims that Ms. Pedraza had asserted in case C 07-4781, with the exception of one claim against the District: an appeal of the decision of the State Office of Administrative Hearings--Special Education Division (OAH) finding that the District did not deny MP a FAPE during SYs 2004-07.  (Docket No. 196).  In the September 30, 2009 Order, the Court also dismissed all the claims Ms. Pedraza asserted in case C

---

[2]Ms. Pedraza filed case number C 07-4781 on her own behalf. She filed case number C 07-5989 on behalf of MP.  Case number C 07-5989 was originally filed in state court.  It was removed to federal court by the District.

3

07-5989 as time-barred.

On July 10, 2008, Plaintiffs' attorney was permitted to withdraw.  Subsequently, the Court dismissed MP's claims without prejudice because, as a minor, he could not proceed unless he was represented by counsel.  The Court also dismissed the claims of Francisco Pedraza because he failed to appear or otherwise prosecute the action.  Thereafter, Ms. Pedraza became the sole Plaintiff in this action and is proceeding pro se.

FACTUAL BACKGROUND

The facts below are taken from the 1AC, the documents attached to it, documents that are judicially noticed and the Administrative Record (AR) and, except as noted, are undisputed.  MP was born on October 25, 1999 and was later diagnosed with autism.  MP's autism makes him eligible for a FAPE under the IDEA.  MP and his parents reside in Alameda, California and, thus, MP is entitled to receive a FAPE from the District.  In October 2002, the District, through the IEP process, made an offer of placement for MP.  The Pedrazas refused to accept the District's offer.  On July 24, 2003, the District and the Pedrazas entered into the 2003 Settlement Agreement, which set forth an educational plan that the parties agreed constituted a FAPE for MP for the upcoming 2003-04 SY.  Pl's Ex. 2, July 25, 2003 Settlement Agreement, ¶ 5.  MP's program was to include behavioral services through the Center for Autism and Related Disorders (CARD), occupational therapy (OT) through SUMA Kids, speech and language services through Children's Hospital of Oakland (CHO) and placement at Son Light Preschool with one-to-one aide support.  2003 Settlement Agreement, ¶¶ 2.B-2.E.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The parties dispute what occurred after the 2003 Settlement Agreement was signed.  Ms. Pedraza argues that the District did not provide the services to which it agreed.  The District, citing evidence from the administrative record of the subsequent OAH hearing, asserts that it tried to provide behavioral services through CARD, OT services through SUMA Kids, and speech and language services through CHO but that it could not do so because the Pedrazas failed to complete the intake processes for CARD and other behavioral service providers, unilaterally terminated the services of SUMA Kids and instructed CHO to bill the Pedrazas' medical insurance carrier and not to bill the District.

In October 2003, the Pedrazas complained to the CDE that the District had not fulfilled its obligations under the 2003 Settlement Agreement and the IDEA.  The CDE originally found the District in compliance but, on May 10, 2004, after the Pedrazas requested reconsideration, the CDE issued a Compliance Reconsideration Report finding that the District was out of compliance with several provisions of the 2003 Settlement Agreement.  The CDE ordered the District to hold an IEP meeting and to take other steps as corrective actions.  Pl's Ex. B at 6.

On June 7, 2004, the parties met for an IEP team meeting and signed an IEP agreement for MP for the 2004-05 SY.  On November 15, 2004, the Pedrazas again contacted CDE, stating that the District was not complying with the CDE's May 10, 2004 Compliance Reconsideration Report.  On February 8, 2005, the CDE issued a letter stating:

The file regarding the above case has been carefully

reviewed and completed.  As appropriate, all required
corrective actions have been received and duly noted.
Therefore, the case is now closed.

Doc. # 226, Pl.'s Ex. C at 28.

On August 18, 2005, the Pedrazas filed a complaint with the
OAH alleging that the District had failed to provide MP with the
services set forth in the 2003 Settlement Agreement and, thus,
denied him a FAPE during the 2003-04 SY.  On September 2, 2005, the
OAH dismissed the claim regarding the 2003-04 SY, finding that it
did not have jurisdiction over a settlement agreement.  Pl.'s Ex.
1.

Subsequently, MP, through Ms. Pedraza, filed, under the IDEA,
administrative requests for due process hearings with the OAH,
alleging that the District had failed to provide him with a FAPE
during the 2004-05, 2005-06 and 2006-07 SYs.  The District also
filed a request for a due process hearing.  These requests were
consolidated and, on April 2 through April 6, and April 17 through
April 20, 2007, a nine-day hearing was held, with both sides
presenting witnesses and documentary evidence.  Comp. in C 07-4781,
Ex. A, June 19, 2007 Administrative Law Judge (ALJ) Decision at 2.
The following issues were before the ALJ: (1) were the District's
triennial assessments of MP in September, October and November,
2005 inaccurate?; (2) should the District have reimbursed the
Pedrazas for an Independent Educational Assessment (IEA) conducted
by Dr. Allison Lowy Apple?; (3) did the District deny MP a FAPE in
the 2004-05, 2005-06 and 2006-7 SYs?; (4) did the District violate
the procedural requirements of the IDEA in SY 2006-07 by refusing
to convene an IEP meeting from June 20, 2006 to the date of the

6

United States District Court
For the Northern District of California

hearing?; (5) did the District offer MP a FAPE for SY 2006-07 by offering to place him in the Special Day Class (SDC) at Haight Elementary School, with related services and supports?; and (6) is the District required to reimburse the Pedrazas for the costs of various services provided to MP and is the District required to immediately convene an IEP meeting? Id. at 2-3.  The administrative record, consisting of the transcript of the hearing and documentary evidence, is over three thousand pages.

On June 19, 2007, the ALJ issued a forty-five page decision finding in favor of the District on all issues.  Id. at 45.

LEGAL STANDARD

I. Judgment on the Pleadings

A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading.  Judgment on the pleadings may be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  The court may consider, in addition to the face of the pleadings, exhibits attached to the pleadings, Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), and facts which may be judicially noticed, Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

In testing the sufficiency of a pleading, the well-plead allegations of the non-moving party are accepted as true, while any allegations of the moving party which have been denied are assumed

7

to be false. <u>Hal Roach Studios</u>, 896 F.2d at 1550. However, the court need not accept conclusory allegations. <u>W. Mining Counsel v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). The court must view the facts presented in the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor, <u>General Conference Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989), but need not accept or make unreasonable inferences or unwarranted deductions of fact. <u>McKinney v. De Bord</u>, 507 F.2d 501, 504 (9th Cir. 1974).

II. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

8

**United States District Court**
For the Northern District of California

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III. IDEA

The IDEA provides federal funding to states for the education of children with disabilities.  20 U.S.C. § 1411.  Participating states must ensure that all eligible students receive a FAPE, which consists of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."  <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 188-89 (1982); 20 U.S.C. § 1401(9).

The IDEA requires a team comprised of the student's parents, qualified professionals and a representative of the local educational agency to meet and develop an IEP, which summarizes the special education and related services which will make up the student's FAPE.  20 U.S.C. § 1414(d).  The school district is not obliged to provide the child with the best possible education, but must provide a "basic floor of opportunity" and "confer some educational benefit."  <u>Rowley</u>, 458 U.S. at 200; <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1314 (9th Cir. 1987).

A state educational agency (SEA) must ensure that programs administered by local educational agencies (LEA) meet the requirements of the IDEA.  20 U.S.C. § 1412(a)(11)(A).  A parent or a public agency may file a due process complaint relating to the

United States District Court
For the Northern District of California

identification, evaluation or educational placement of a child with a disability or the provision of a FAPE to the child.  20 U.S.C. § 1415 (b)(6); 34 C.F.R. § 300.507(a).  After receiving such a complaint, the SEA must hold an impartial due process hearing, at which a party has the rights, among other things, to be advised by counsel, present evidence, and confront, cross-examine and compel the attendance of witnesses.  20 U.S.C. § 1415 (f), (h); 34 C.F.R. §§ 300.511, 300.512.  Any party may appeal the decision of the due process hearing officer.  20 U.S.C. § 1415 (g), (i)(A); 34 C.F.R. § 300.514.  Any party aggrieved by the appeal has a right to bring a civil action in state or federal court.  20 U.S.C. § 1415 (i)(2)(A); 34 C.F.R. § 300.516.

Any SEA or LEA must establish procedures to allow disputes to be resolved through a mediation process.  20 U.S.C. § 1415(e); 34 C.F.R. § 300.506(a).  This is known as an informal complaint resolution procedure (CRP).  If the parties resolve a dispute through the mediation process, they must execute a legally binding agreement that sets forth that resolution.  34 C.F.R. § 300.507(6).  The written agreement is enforceable in state or federal court.  34 C.F.R. § 300.507(7).

DISCUSSION

I. State Defendants' Motion for Judgment on the Pleadings

In her 1AC, Ms. Pedraza alleges that, after State Defendants issued their May 10, 2004 Compliance Reconsideration Report, they violated the IDEA by (1) not investigating or monitoring the District's continued failure to provide MP with IDEA services required under the 2003 Settlement Agreement and (2) not enforcing

the May 10, 2004 Compliance Reconsideration Report, which required the District to hold an IEP meeting and take other corrective actions to fulfill the District's obligations under the 2003 Settlement Agreement.

Citing the Court's September 30, 2009 Order, State Defendants first argue that no claims remain against them.  The September 30, 2009 Order concluded that "the case is now limited to plaintiff's IDEA claims against the district defendants in 05-4977 and 07-4871 and plaintiff's breach of contract claim against the district defendants in 05-4977."  However, State Defendants overlook the fact that, at the beginning of the Order, the Court noted, "The state defendants make no motion on the 05-4977 complaint."  The Court's conclusion summarized the remaining claims against the moving party, which was the District; it was not commenting about the claims against State Defendants because they had not filed a motion for the Court to address.  State Defendants' first argument is without merit.

State Defendants argue that there is no private right of action under the IDEA to assert claims challenging the process or decisions made by the parties through mediation under a state's CRP.  Ms. Pedraza responds that she can bring a such claim under 20 U.S.C. § 1415.

The parties do not cite any Ninth Circuit cases on this issue, nor could the Court find any.  State Defendants rely on <u>Virginia Office of Protection and Advocacy v. Virginia, Department of Education</u>, which concluded that § 1415 does not provide a private right of action to challenge a state's CRP or its outcome.  262 F.

11

United States District Court
For the Northern District of California

Supp. 2d 648, 660 (E.D. Va. 2003).

The court noted that the IDEA provides two avenues for pursuing a grievance: an aggrieved party can initiate a complaint through the state's CRP under 20 U.S.C. § 1415(e), or obtain a due process hearing under 20 U.S.C. § 1415(b)(6), (f). Id. at 659-60. The court continued that, for a due process hearing, the IDEA expressly delineates an aggrieved party's rights, such as the right to counsel, to confront, cross-examine and compel the attendance of witnesses, to a verbatim record of the hearing, to a written opinion, to appeal, and to bring suit in federal court at the conclusion of the appellate process. Id. (citing 20 U.S.C. § 1415 (g), (h), (i)(2)). However, the IDEA provides no such specific rights for the CRP; it does not provide for the right to appeal or for judicial review of a decision rendered in the CRP. Id. The court concluded that, for it to decide "that § 1415, even in its silence, intended to create a private right of action for parties to challenge an otherwise informal complaint resolution process" would defy the "clear statement rule" of Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 17 (1981), and would second-guess the drafters' intentions. Id. at 559. In so holding, the Virginia Office of Protection court distinguished Beth v. Carroll, 87 F.3d 80, 86, 88 (3rd Cir. 1996), which concluded that § 1415 created a private right of action for plaintiffs alleging that the state had failed to establish a complaint resolution procedure as required by federal regulations implementing the IDEA. Id. at 559 n.4.

This Court agrees with the well-reasoned opinion in Virginia

12

United States District Court

For the Northern District of California

Office of Protection.  Beth is distinguishable because it addressed a state-wide policy of failing to implement the CRP process itself.

Ms. Pedraza argues that her claim does not address the CRP, but rather the CDE's failure to investigate the District's non-compliance with the CDE's May 2004 Compliance Reconsideration Report, and to enforce compliance.  Ms. Pedraza contends that, under the IDEA, the CDE has "a broad scope of power and authority to use at its discretion when faced with one of its local education agency's failure to follow its orders," such as withholding the District's funding.

State Defendants respond, citing Mrs. W. v. Tirozzi, 706 F. Supp. 164, 168-69 (D.Conn. 1989), that a failure-to-monitor claim is cognizable only when the plaintiff alleges that the state agency had a pattern and practice of flagrantly neglecting its general monitoring and supervisory duties.  In Mrs. W., the court noted that, in order for the plaintiffs to assert a claim that the state agency failed to enforce a local agency's compliance with the IDEA, they must allege more than dissatisfaction with the outcome of the CRP; they must show that inadequacies in the procedures or application of the CRP constitute a pattern and practice by the state agency of failing to meet its responsibility to assure that local boards were in compliance with federal law.  Id. at 169.

The 1AC generally alleges that State Defendants "failed to adopt procedures and practices or take necessary measures to ensure that AUSD fulfills its obligations under settlement agreements arising under the IDEA to resolve claims of denials of a FAPE, including the Parents' settlement agreement."  1AC at ¶ 41.

United States District Court
For the Northern District of California

However, this conclusory statement is unsupported by any factual allegations; the gravamen of Ms. Pedraza's claim against State Defendants is that they specifically did not investigate the Pedrazas' claim that the District had not complied with the 2003 Settlement Agreement. However, the allegations themselves show the opposite to be true. The 1AC alleges that the CDE several times reviewed Ms. Pedraza's claim that the District was not complying with the 2003 Settlement Agreement, and issued reports based on its findings. In the first report, the CDE found that the District had fulfilled its obligations under the 2003 Settlement Agreement. In the second report, the May 2004 Compliance Reconsideration Report, the CDE found that the District was out of compliance with several provisions, ordered the District to take corrective actions, and required the District to send evidence of its corrective actions to the CDE. Finally, in the February 8, 2005 letter, the CDE found that the District had completed all the corrective actions it had been directed to take. These allegations indicate that State Defendants investigated Ms. Pedraza's complaints regarding the 2003 Settlement Agreement and issued findings and reports. Ms. Pedraza may disagree with the CDE's finding that the District took all corrective actions, but, based on the allegations in the 1AC, she cannot claim that State Defendants did not engage in the investigative process or enforce the corrective actions it ordered. Ms. Pedraza's argument that the CDE's closing of her case left her without an avenue to litigate the District's breach of the 2003 Settlement Agreement is without merit; in this complaint Ms. Pedraza's sues the District for breach of the 2003 Settlement

14

Agreement and failure to provide a FAPE to MP for the 2003-04 SY.

State Defendants' review of the implementation of the 2003 Settlement Agreement, which the Pedrazas and the District entered into in the context of the CRP, amounts to a part of the CRP. The 2003 Settlement Agreement was not reached in a due process hearing. Thus, section 1415 does not provide a private right of action for Ms. Pedraza's dissatisfaction with the CRP. Even if the CDE review were not a part of the CRP, Ms. Pedraza does not provide authority that she has a private right of action to challenge the CDE's decision in federal court under the IDEA.

Therefore, the Court concludes that, based on the face of the pleadings, State Defendants are entitled to judgment as a matter of law and their motion for judgment on the pleadings is granted. Furthermore, as discussed below, Ms. Pedraza fails to proffer evidence that the District did not comply with the 2003 Settlement Agreement; therefore, even if State Defendants were not entitled to judgment on the pleadings on the claim that they did not enforce the 2003 Settlement Agreement, Ms. Pedraza's claim that they did not enforce it would be futile.

II. District's Motion for Summary Judgment

A. Appeal of OAH Ruling

1. Standard of Review

As mentioned above, under the IDEA, a district court is empowered to review a state educational agency's decisions in due process hearings. 20 U.S.C. § 1415(i)(2). Federal courts reviewing state administrative proceedings "are to 'receive the records of the administrative proceedings;' 'hear additional

15

evidence at the request of a party;' and 'grant such relief as the court determines is appropriate' based on a preponderance of the evidence." <u>Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.</u>, 267 F.3d 877, 887-88 (9th Cir. 2001); 20 U.S.C. § 1415(i)(2)(C). Thus, judicial review in IDEA cases is different from judicial review of other agency actions, in which courts generally are confined to the administrative record and must accord the agency great deference. <u>Id.</u> (citing <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471 (9th Cir. 1993)). However, complete de novo review is inappropriate. <u>Id.</u> Courts cannot substitute their own notions of sound educational policy for those of the school authorities. <u>Id.</u> Because it was Congress' intent that "the states have the primary responsibility of formulating each individual child's education," a court must give due weight to the state hearing officer's decision. <u>Id.</u> (citing <u>Rowley</u>, 458 U.S. at 206-08). The amount of deference owed to the hearing officer is a matter for the court's discretion, with greater deference due if the hearing officer's findings are thorough and complete. <u>Adams v. State of Oregon</u>, 195 F.3d 1141, 1145 (9th Cir. 1999).

The party challenging an administrative decision in district court bears the burden of proof that the decision should be reversed. <u>Clyde K. v. Puyallup Sch. Dist., No. 3</u>, 35 F.3d 1396, 1398 (9th Cir. 1994) <u>superceded by statute on other grounds</u>; <u>Hood v. Encinitas Union Sch. Dist.</u>, 486 F.3d 1099, 1103 (9th Cir. 2007).

2. Analysis

In its motion based on the administrative record, the District presents detailed arguments, including citations to the

**United States District Court**
For the Northern District of California

administrative record, establishing that the hearing officer's decision was supported by substantial evidence, was well-reasoned and, thus, should be affirmed.  In her opposition to the District's motion for summary judgment, Ms. Pedraza asserts that the motion should be denied "based on the fact that: (1) Plaintiff did not receive a 'fair trial in a fair tribunal;' (2) the District was a 'party in interest' to the pending and present lawsuit; and (3) to grant the District's motion would deny Plaintiff his right to review as an aggrieved party." Opp. at 10.  Ms. Pedraza's primary argument is that the District's removal of case number C 07-5989[3] obstructed her right to the procedural guarantees of 20 U.S.C. § 1415(i)(2)(A), which provides that an aggrieved party may bring a civil action in state court or federal district court.  Opp. at 10, 12.

Ms. Pedraza's arguments are non-responsive to the District's motion, and are without merit.  Case number C-07-5989 was an appeal of the due process hearing decision issued by OAH.  The case was correctly removed pursuant to 28 U.S.C. § 1441(b), which provides that any action over which district courts have original jurisdiction based on a claim or right arising under the Constitution, treaties or laws of the United States may be removed from state court.  As indicated in 20 U.S.C. § 1415(i)(2)(A), a district court, as well as a state court, has jurisdiction to hear appeals of state agencies' decisions after hearings under the IDEA.

---

[3]Ms. Pedraza does not specify which case the District removed from state court.  However, only case number C-07-5989 was removed. It was subsequently dismissed as untimely.

Because this Court has original jurisdiction over Ms. Pedraza's appeal of the OAH decision, removal was proper.  Furthermore, even though case number C-07-5989 was subsequently dismissed, it was duplicative of case number C-07-4781, which has been consolidated with this case and which is now addressed in the District's motion for summary judgment.  Therefore, Ms. Pedraza had the opportunity to present her arguments that the OAH decision was incorrect, but has failed to do so.

Ms. Pedraza explains that her argument about the District being a "party in interest" means that the State had an interest in the OAH hearing decision such that there was a conflict of interest, and the State should have recused itself and removed her complaint to federal court.  This argument is without merit because the OAH correctly heard Plaintiff's complaint in accordance with statutory and regulatory provisions.

As the party challenging the decision, Ms. Pedraza bears the burden of proving that it should be reversed.  Because the hearing officer's decision was thorough and complete, it is deserving of considerable deference.  However, Ms. Pedraza does not submit any argument explaining why the hearing officer's decision was incorrect, nor does she make any citations to the administrative record or submit any additional evidence.  Therefore, Ms. Pedraza completely fails to carry her burden of proof that the hearing officer's decision was incorrect.  The District's motion for summary judgment on this claim is granted.

18

B. Violation of IDEA for 2003-04 SY and Breach of 2003 Settlement Agreement

Ms. Pedraza claims that the District is liable for breach of contract and violating the IDEA because it failed to provide MP with the services required under the 2003 Settlement Agreement. The District argues that it attempted to provide all the services to which the parties agreed, but that the Pedrazas refused to participate in the process and to provide the necessary information so that the services could be provided.

Under California contract law, a party to a contract has a duty to do everything incumbent upon him or her to accomplish the purpose of the contract, and a duty not to do anything which interferes with the right of the other party to receive the benefits of the contract. Corson v. Brown Motel Investments, Inc., 87 Cal. App. 3d 422, 427 (1978); Ladd v. Warner Bros. Entertainment, Inc., 184 Cal. App. 4th 1298, 1306 (2010). Furthermore, hindrance of the other party's performance operates to excuse that party's nonperformance. Erich v. Granoff, 109 Cal. App. 3d 920, 930 (1980). In regard to the IDEA claim, a local school district cannot be held liable for failing to provide services to a student when the failure is caused by the parents' lack of cooperation. Glendale Unified Sch. Dist. v. Almasi, 122 F. Supp. 2d 1093, 1110 (C.D. Cal. 2000) (parent exceeded "aggressive advocate" standard by refusing to communicate with school district and withholding student's records); B.G. v. Cranford Bd. of Educ., 702 F. Supp. 1158, 1166 (D.N.J. 1988) (denying reimbursement for private services to parents who disavowed participatory process

19

with school authorities).

The District cites many pages of the administrative record to establish that the Pedrazas failed to complete the necessary paperwork.[4]

For instance, CARD began providing behavioral services to MP for the SY 2003-04, but discontinued them "because Plaintiff was not cooperating with them." AR at 2803. The District offered to replace CARD with the Foundation for Autistic Children Education and Support (FACES), but the Pedrazas did not complete the intake process. AR 2803; 2159. The District then offered services through Lovaas Institute for Early Intervention (LIFE), but the Pedrazas said they preferred the Behavioral Intervention Association (BIA). AR 2803; 2145; 2147. The Pedrazas signed the consent form to release confidential information to the BIA, but then revoked it. AR 1144-45; 2148-49; 2783-84. As a result, the BIA refused to proceed with the intake process. AR 2148-49; 2166-67; 2780; 2803-04. On June 7, 2004, the District again offered the LIFE program. AR 2150-51; 2803. The Pedrazas initially accepted the LIFE program and signed a consent form, but they did not complete the intake process. AR 1166-67. The District concedes that MP received no behavioral services in the 2003-04 SY, but argues that this was because the Pedrazas did not cooperate in the intake process for any provider. The District provides evidence that the Pedrazas' actions also prevented it from providing

---

[4]Although IDEA services for the 2003-04 SY were not before the ALJ, he admitted evidence regarding this time period as background information for the claims alleging that the District failed to provide services in subsequent years.

consistent OT services to MP and paying for speech and language services provided by CHO.

Ms. Pedraza fails to counter any of the District's evidence that it was her and her husband's actions that caused its inability to provide the services required by the 2003 Settlement Agreement. However, Ms. Pedraza argues three ways in which the District breached the 2003 Settlement Agreement. First, Ms. Pedraza argues that the District agreed to provide in-home services through LIFE, which required the District to pay LIFE, but that it then offered a "workshop model," which required the Pedrazas to pay LIFE directly.[5] Ms. Pedraza states that she and her husband could not afford to pay these fees and that they never agreed to such an arrangement. However, Ms. Pedraza does not provide any citation to the administrative record or other evidence to support this argument. Therefore, she fails to raise a triable issue of material fact that the District either breached the 2003 Settlement Agreement or violated the IDEA because it offered to provide LIFE's "workshop model" instead of in-home services.

Second, Ms. Pedraza argues that the District failed to enter into master contracts and individual service agreements with providers of MP's speech and language and behavior services. As support, she cites Finding of Fact 4 of the CDE's May 2004 Compliance Reconsideration Report. Pl.'s Ex. B, CDE May 2004 Compliance Reconsideration Report, at 5, Finding of Fact 4. Ms.

---

[5]The Court assumes this means the Pedrazas would initially pay LIFE for the services provided and then get reimbursed by the District, as the District had been doing for a variety of services that had been pre-paid by the Pedrazas.

United States District Court
For the Northern District of California

Pedraza also submits evidence that the District did not sign a contract with CHO.

In Finding of Fact 4, the CDE found that the District did not have a master contract or individual service agreement with CHO or the autism center for MP when the special education services were initiated for the 2003-04 SY. Id. However, in Finding of Fact 2, the CDE found that the District continued to provide services from both institutions pursuant to the 2003 Settlement Agreement until the autism center terminated services to MP on November 3, 2003. Id. Likewise, in Finding of Fact 5, the CDE found that, although the District did not develop an individual service agreement with CHO and the autism provider in a timely manner, MP received services from both providers. Id. Furthermore, in Finding of Fact 6, the CDE found that the District incorporated the services into the October 14, 2003 IEP as required by the 2003 Settlement Agreement. Id.

Ms. Pedraza concludes that, based upon the Findings of Fact in the CDE's May 2004 Compliance Reconsideration Report, the District went "to great lengths to delay and deny Plaintiff the services which they promised him in the settlement agreement." Opp. at 6. However, the CDE's May 2004 Compliance Reconsideration Report does not support Ms. Pedraza's conclusion. She overlooks the fact that, even though the contracts with CHO and the autism center were not in place, the CDE found that MP continued to get these services.

Ms. Pedraza's last argument is that the District failed to reimburse her and her husband for services to MP for which they paid, as required by the 2003 Settlement Agreement. In Finding of

United States District Court
For the Northern District of California

Fact 6, the CDE found that the District provided insufficient evidence "to show that reimbursement payments have been made to the parents for pre-school and OT services in a timely manner."  In Corrective Action Number 5, the CDE required the District to clarify payment procedures to CHO and to clarify reimbursement and proof of payment procedures to the parents.  In the CDE's February 8, 2005 Letter Regarding Compliance Investigation, submitted by Ms. Pedraza herself, the CDE found that the District had taken all required corrective actions.  Absent specific evidence that the District did not reimburse her as required under the 2003 Settlement Agreement, Ms. Pedraza has failed to raise a triable issue of fact on this issue.

Therefore, Ms. Pedraza fails to raise a triable issue of material fact disputing the District's evidence that it was the Pedrazas' conduct that prevented it from providing the services required in the 2003 Settlement Agreement.  Ms. Pedraza also fails to raise a triable issue of fact that the District otherwise breached the 2003 Settlement Agreement or violated the IDEA.  Thus, the District's motion for summary judgment on Ms. Pedraza's claims for breach of contract and violation of the IDEA for SY 2003-04 is granted.

III. District's Motion for Summary Judgment on its Counter-Claims

A. Breach of Contract

In its counter-claim for breach of contract, the District alleges that Counter-Defendants, Mr. and Ms. Pedraza, breached the 2003 Settlement Agreement by preventing the District from providing the services outlined in the 2003 Settlement Agreement.  The

23

**United States District Court**
For the Northern District of California

District contends that the Pedrazas breached paragraphs 2.K(2) and 11 of the 2003 Settlement Agreement.

Paragraph 2.K(2) states that the District's provision of services listed in paragraphs B though E are contingent upon the parents providing "a full release to exchange information and documentation between the District and MP's service providers." Paragraph 11 provides, "Each party to this Agreement shall cooperate fully in the execution of any and all other documents and the completion of any additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement."

Citing testimony and evidence submitted in the hearing before the ALJ, the District argues that its ability to perform its obligations under the 2003 Settlement Agreement was contingent upon the Pedrazas cooperating with service providers and that, by not doing so, the Pedrazas did not act in good faith or deal fairly with the District.

Ms. Pedraza, citing the findings of the May 2004 Compliance Reconsideration Report, merely reargues that the District breached the 2003 Settlement Agreement because it did not (1) contract with service providers; (2) provide services to MP at no cost to the Pedrazas; (3) ensure that MP received the promised services; (4) redress its continued violation of the IDEA; and (5) implement and follow procedures outlined by the CDE in its May 2004 Compliance Reconsideration Report.  However, the findings in the May 2004 Compliance Reconsideration Report do not avail Ms. Pedraza.

24

**United States District Court**
For the Northern District of California

First, while the CDE at one point found the District out of compliance with the 2003 Settlement Agreement, it later found that the District had complied.  Second, for the purpose of the District's breach of contract claim, the CDE's reports do not amount to testimonial or documentary evidence to controvert the testimony and documents cited by the District.  Thus, Ms. Pedraza does not create a disputed issue of material fact.  Ms. Pedraza fails to address the District's evidence that she and her husband breached the 2003 Settlement Agreement by not cooperating with the service providers obtained by the District.

Therefore, the District, through citations to testimony and documents in the AR, has established its prima facie case that the Pedrazas failed to cooperate with service providers and, thus, breached the 2003 Settlement Agreement.  Ms. Pedraza fails to raise a triable issue of material fact that the District breached the 2003 Settlement Agreement and that the Pedrazas did not breach it. Therefore, the District's motion for summary judgment on its counter-claim against the Pedrazas for breach of contract is granted.

B. Express Indemnity

Paragraph 6 of the 2003 Settlement Agreement provides that the Pedrazas would

> indemnify, defend and hold harmless the District . . .
> from and against any and all claims . . . arising from
> any breach or default in the performance of any
> obligation on the Parents' part to be performed under the
> terms of this Agreement, . . . and from any and all
> costs, expenses and liabilities incurred in the defense
> of any such claim or action or proceeding brought thereon
> . . .

25

United States District Court
For the Northern District of California

The District notes that Ms. Pedraza has sued it for breach of the 2003 Settlement Agreement and for violation of the IDEA by failing to provide the services required therein.  The District argues it was prevented from performing its obligations due to the Pedrazas' failure to cooperate with the requirements of the service providers, as required by ¶¶ 2.K(2) and 11.  The District concludes that, because Ms. Pedraza's claims arise from the breach of the Pedrazas' obligations, they fall under paragraph 6 of Agreement and, thus, the Pedrazas have a duty to defend and indemnify it for its attorneys' fees and costs associated with its defense of Ms. Pedraza's claims.

Ms. Pedraza responds that, because the District breached the 2003 Settlement Agreement, it forfeits any right to indemnity.  She cites paragraph 13, which provides, "Should either party breach any portion of this Agreement, the breaching party shall forfeit any and all consideration promised or received under the terms of this Agreement."  However, as discussed above, the Pedrazas' failure to perform ¶¶ 2.K(2) and 11 of the Agreement excused any failure on the part of the District to provide required services.  Therefore, the District did not breach the 2003 Settlement Agreement and the Pedrazas did breach it.

Ms. Pedraza also argues that the District has retaliated against her for advocating for MP by removing case C-07-5989, which denied her an impartial due process hearing.  As discussed above, this argument is without merit.  She also argues that the District's filing of the indemnity claim is an act of retaliation "in an effort to obtain monetary damages."  There is no evidence

that the District's filing of this counter-claim was retaliatory. Lastly, Ms. Pedraza's argument that the judge who decided the previous motions filed in this case was biased, and created an obstruction of justice, is without merit.

Thus, Ms. Pedraza has failed to raise any triable issue of material fact that she is not liable under the express indemnity clause of the 2003 Settlement Agreement, and Mr. Pedraza did not oppose the motion.   Summary judgment of liability is granted to the District on this claim.

CONCLUSION

For the foregoing reasons, the Court grants State Defendants' motion for judgment on the pleadings (Docket No. 222) and the District's motions for summary judgment on Ms. Pedraza's claims (Docket No. 223) and for summary judgment of liability on its counter-claims for breach of contract and express indemnity (Docket No. 223).   The District's damages remain to be determined.   The District did not move for summary judgment on its counter-claims for: (1) enforcement of the 2007 mediated final agreement, under the IDEA and related state law; (2) state law fraud based on the 2007 final agreement; and (3) recovery of attorneys' fees. Therefore, these counter-claims are still pending in this action. Within seven days from the date of this Order, the District shall inform the Court how it proposes to proceed on its claims.

//

//

//

//

27

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Judgment will not be entered until these counter-claims are resolved.

IT IS SO ORDERED.

Dated: 9/29/2011

CLAUDIA WILKEN
United States District Judge

28

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PEDRAZA et al,

        Plaintiff,

  v.

ALAMEDA UNIFIED SCHOOL DISTRICT et al,

        Defendant.
_____/

Case Number: CV05-04977 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 29, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Francisco  Pedraza
22 Souza Court
Alameda,  CA 94502

Linda  Pedraza
22 Souza Court
Alameda,  CA 94502

Dated: September 29, 2011

                    Richard W. Wieking, Clerk
                    By: Nikki Riley, Deputy Clerk

United States District Court
For the Northern District of California

29