IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PEDRAZA and FRANCISCO PEDRAZA, individually and on behalf of their son M.P.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ALAMEDA UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants.<br>_____/ | No. C 05-4977 CW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL AND MISCELLANEOUS REQUESTS AND GRANTING IN PART DEFENDANT DISTRICT'S MOTION FOR DAMAGES |

    Defendants and Counter-Claimants Alameda Unified School District and Alameda Unified School District Board of Education (together, the District) move for summary judgment on damages for their counter-claims for breach of contract and express indemnity. (Docket No. 270). Counter-Defendants Linda and Francisco Pedraza have not opposed this motion. Ms. Pedraza has filed a motion for recusal of the undersigned judge, (Docket No. 287), and has filed three miscellaneous documents (Docket Nos. 264, 265 and 289). The District has not filed an opposition to Ms. Pedraza's recusal motion or to her miscellaneous filings. The motions were taken under submission and decided on the papers. Having considered all the papers filed by the parties, the Court denies Ms. Pedraza's motion for recusal and the requests in her miscellaneous filings and grants in part the District's motion for summary judgment on damages.

PROCEDURAL BACKGROUND

On September 29, 2011, the Court issued an order granting summary judgment of liability on the District's counter-claims against the Pedrazas for breach of the 2003 Settlement Agreement and for express indemnity under that Agreement.  On October 20, 2011, the Court ordered the District to file a motion for summary judgment regarding damages, which consisted of the attorneys' fees it incurred in litigating this action.  The Court ordered Mr. and Ms. Pedraza to file an opposition within three weeks after the District filed its motion.  However, before the District filed its motion, Ms. Pedraza filed two documents entitled, "Statement of Genuine Issues in Opposition to the Order for the Defendants' Motion for Summary Judgment" (Docket no. 264) and "Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Summary Judgment."  (Docket no. 265).  These documents attempt to relitigate issues that the Court had previously decided; they do not address the District's motion for damages in the amount of its attorneys' fees.  The District filed its motion for damages on November 30, 2011.  On December 6, 2011, Ms. Pedraza filed two more documents: (1) Motion to Disqualify Judge, (Docket no. 287), and (2) Response and Opposition to Docket Numbers 257 and 269, (Docket no. 289).[1]  Neither of these documents addresses the

---

[1] Docket numbers 257 and 269 are previous orders of the Court.

2

District's motion for damages and the time for filing an opposition has now passed.

## DISCUSSION

I. Ms. Pedraza's Motion for Recusal

Pursuant to 28 U.S.C. § 455(a) and (b)(1)(5)(iii), Ms. Pedraza moves for recusal of the undersigned judge and for dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(b)[2] because the Court has failed to adjudicate the case on its merits.

Section 455 states, in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
> >
> > . . .
> >
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of each such a person:
> >
> > . . .
> >
> > (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455.

---

[2] Rule 41(b) authorizes the Court to dismiss an action on an involuntary basis if the plaintiff fails to prosecute or to comply with the rules or a court order.

3

In Liteky v. United States, the Supreme Court explained that there are only two grounds for recusal under § 455(a): (1) bias based upon knowledge acquired outside judicial proceedings and (2) such deep-seated and unequivocal antagonism that would render fair judgment impossible. Liteky v. United States, 510 U.S. 540, 556 (1994). The Court clarified, as follows:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . In and of themselves, . . . they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id. at 555.

A judge is presumed to be qualified and the movant bears a substantial burden of proving otherwise. United States v. Zagari, 419 F. Supp. 494, 501 (N.D. Cal. 1976). A judge has a duty not to disqualify himself or herself unless there are proper and reasonable grounds for doing so. Idaho v. Freeman, 478 F. Supp. 33, 35 (D. Idaho 1979).

Ms. Pedraza declares that this Court violated her and MP's rights by: (1) proceeding with a bench trial without her consent; (2) failing to adjudicate the case on its merits; (3) failing to consider material facts that she presented to the Court;

4

(4) dismissing her claims without cause; and (5) misrepresenting one of her pleadings as a motion for reconsideration, instead of an objection, in order to deny her relief.

None of the grounds Ms. Pedraza asserts requires recusal under § 455(a). They fail because they concern the Court's rulings. These grounds, under Liteky, are inadequate to obtain the relief she seeks. Likewise, Ms. Pedraza's grounds for recusal do not fall under the reasons for disqualification of a judge listed in § 455(b).

Accordingly, Ms. Pedraza's motion for recusal is denied and her motion to dismiss under Rule 41(b) based on the judge's bias is also denied. Docket no. 287.

II. Ms. Pedraza's Other Filings

In the other documents Ms. Pedraza has filed, (Docket nos. 264, 265, and 289), she merely re-argues issues which she has previously litigated and on which the Court has ruled. Ms. Pedraza may not litigate the same issues in different motions. Therefore, the motions or requests raised in these documents are denied.

III. The District's Motion for Summary Judgment of Damages

A. Background

On October 22, 2002, the District made an offer of placement for Mr. and Ms. Pedraza's son, MP, who was then three years old and diagnosed with autism. Mr. and Ms. Pedraza disagreed with the District's offer and filed a request for a due process hearing.

5

To resolve the dispute and avoid litigation, the District and the Pedrazas entered into a mediated settlement agreement, which set forth an educational plan for MP for the school year (SY) 2003-04. This document is known as the 2003 Settlement Agreement. Paragraph six of the 2003 Settlement Agreement contains the following indemnity provision in which the Pedrazas agree to

> indemnify and hold harmless the District, its officers, employees or agents from and against any and all claims arising from any breach or default in the performance of any obligation on the Parents' part to be performed under the terms of this Agreement, . . . and from and against all costs, attorneys' fees and costs, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon . . .

Settlement Agreement, Request for Judicial Notice, Ex. B at Ex. 2, ¶ 6.

After the District and the Pedrazas signed the 2003 Settlement Agreement, the District began to implement it. Although the District offered many different providers for MP's behavioral services, occupational therapy and speech and language services, the Pedrazas were not happy with any of the providers the District selected. The Pedrazas hired an attorney to represent them in their dealings with the District. The District responded by utilizing its attorney, the law firm of Lozano Smith, to work through the issues that arose in implementing the 2003 Settlement Agreement. Lozano Smith also assisted the District in defending against a complaint Mr. and Ms. Pedraza filed with the California Department of Education alleging that the District was not complying with the 2003 Settlement Agreement. During the time

6

the 2003 Settlement Agreement was in effect, Lozano Smith billed the District for attorneys' fees in the amount of $39,526. The District seeks reimbursement of this amount as damages for its breach of contract claim.

On December 1, 2005, Mr. and Ms. Pedraza, individually and on behalf of their son, MP, filed this action alleging many claims under the Individuals with Disabilities in Education Act (IDEA) against the District and other Defendants. Breach of the 2003 Settlement Agreement was one of the alleged claims. On February 23, 2006, the Pedrazas filed a First Amended Complaint (1AC) that alleged six causes of action against the District, including the claim for breach of the 2003 Settlement Agreement. On September 17, 2007 and November 14, 2007, the Pedrazas filed two additional complaints regarding services provided to MP during SY's 2004-07. On December 18, 2007, the two later cases were consolidated with this case. By early 2009, motion practice had resolved all but two claims against the District: (1) breach of the 2003 Settlement Agreement and (2) violation of the IDEA for the School Year 2003-04, based on a breach of the 2003 Settlement Agreement. These last two claims were resolved in favor of the District in the Court's September 29, 2011 Order.

After the Pedrazas initiated this litigation, the District employed as its lead counsel Stubbs & Leone, a firm with expertise in the field of special education. Lozano Smith provided assistance to Stubbs & Leone. In addition to the fees incurred in

7

implementing the 2003 Settlement Agreement, the District requests reimbursement of the following attorneys' fees. From the time the first complaint was filed on December 1, 2005 until the filing of the two other cases in late 2007, the law firms were paid $41,617.25 for work on the claims arising under the 2003 Settlement Agreement. See Declaration of Gregory Wedner, Lozano Smith managing shareholder, ¶ 8. From the time the cases were consolidated in December, 2007 through October, 2011, Lozano Smith was paid $12,516 and Stubbs & Leone was paid $54,808, for a total of $67,324, for litigation on the consolidated complaints, which included the Pedrazas' appeal of the decision of the Office of Administrative Hearings (OAH) regarding MP's services for the SY's 2004-07. Wedner Dec. ¶ 8. Mr. Wedner states that, in exercising his billing judgment, he excluded from the fees requested in this motion the hours spent on this case by twelve attorneys and paralegals and fees incurred for time spent on filing the District's third, fourth and fifth counter claims and other unrelated matters against the Pedrazas. In the motion, the District indicates that it seeks only half the fees it incurred from October 2007 to October 2011, to exclude from its request attorney time spent on the second set of complaints, including the OAH appeal. Thus, the District seeks reimbursement of half of the $67,324 it paid its counsel during December, 2007 through October, 2011, or $33,662.

For preparing this attorneys' fees motion and the reply, the District anticipated that it would incur $9,950 in legal fees and seeks reimbursement of this amount.

Therefore, the total amount the District seeks in damages for its attorneys' fees is

```
        $39,526    Before lawsuit was filed on December 1, 2005
        $41,617    From December 1, 2005 through September, 2007
         33,662    From October, 2007 through October, 2011 (one-
                   half attorneys' fees incurred)
          9,950    Attorneys' fees motion estimate

       $124,755    Total
```

B. Discussion

The District requests attorneys' fees it incurred in implementing the 2003 Settlement Agreement as damages on its claim that the Pedrazas breached that agreement.

Generally, damages resulting from a breach of contract claim do not include attorneys' fees. Attorneys' fees are awarded under California law only when a statute or contract provision so provides. Reynolds Metals Co. v. Alperson, 25 Cal. 3d 124, 127 (1979); Lerner v. Ward, 13 Cal. App. 4th 155, 158 (1993). The District does not point to a provision in the 2003 Settlement Agreement or to a statute that authorizes the award of attorneys' fees incurred in implementing the 2003 Settlement Agreement. The fact that attorneys' fees were the only cost the District incurred as a result of the Pedrazas' breach of the 2003 Settlement Agreement is an insufficient ground upon which to award attorneys'

9

fees. Thus, the Court denies the request for $39,526 in attorneys' fees incurred in implementing the 2003 Settlement Agreement.

Under the indemnity provision of the 2003 Settlement Agreement, the District requests reimbursement of the attorneys' fees it incurred in defending against the Pedrazas' claims for breach of the 2003 Settlement Agreement and for violation of the IDEA for SY 2003-04 based upon the breach of the 2003 Settlement Agreement. The District also requests reimbursement for fees incurred pursuing its counter-claims for breach of contract and indemnity. The 2003 Settlement Agreement provides for indemnification, which can include attorneys' fees. Ordinarily, such a clause would provide for a party to be reimbursed by its indemnitor for fees incurred defending against a third party claim. Here, the District seeks indemnification for fees incurred defending itself against claims by its indemnitor. Although the situation is unusual, the indemnity provision, which states that the Pedrazas shall indemnify the District for attorneys' fees and costs incurred in the defense of claims arising from their breach of the 2003 Settlement Agreement, allows for an award of attorneys' fees under these circumstances. However, the indemnity provision does not cover attorneys' fees the District incurred in litigating its counter-claims against the Pedrazas.

Recovery under the indemnity provision is a state law claim. Federal courts exercising subject matter jurisdiction over state

10

law claims follow state law concerning attorneys' fees unless the state law contradicts a valid federal statute. <u>Avery v. First Resolution Mgmt. Corp.</u>, 568 F.3d 1018, 1023 (9th Cir. 2009). Because neither party asserts that federal law conflicts with state law, the Court will follow California's attorneys' fees law.

In California, a court assessing attorneys' fees generally begins with the lodestar figure, which is based on the compilation of the reasonable time spent on the case multiplied by the reasonable hourly billing rate of each attorney involved in the case. <u>Ketchem III v. Moses</u>, 24 Cal. 4th 1122, 1131 (2001). In determining whether the time spent on the case is reasonable, the court must carefully review attorney documentation of hours expended to eliminate inefficient or duplicative efforts. <u>Id.</u> at 1132. To determine if the rates requested are reasonable, the court must consider how they compare to the prevailing hourly rates charged by attorneys of like skill in the community. <u>Id.</u> at 1133.

### C. Reasonable Hours

#### 1. Lozano Smith

In support of its request for reimbursement of legal services provided by Lozano Smith, the District submits the declaration of Gregory A. Wedner. Mr. Wedner was admitted to the California Bar in 1975 after receiving his law degree from the Southwestern University School of Law. From 1975 to 2001, he litigated criminal and civil cases and appellate matters. Over the years,

11

he represented private and public entities in increasingly complex matters. Mr. Wedner has been with Lozano Smith since 2001 and, in 2007, he was selected to be its managing shareholder.

Mr. Wedner states that, with his declaration, he submits the billing records dated August 1, 2003 through June 30, 2004 and January 1, 2006 through September 1, 2010, which include month by month summaries compiled from contemporaneously recorded, fully documented and detailed time records maintained by all of the attorneys in the regular course of their work on this case. Exhibit B contains the billing summary from August 1, 2003 to June 30, 2004 for legal work directed at implementing the 2003 Settlement Agreement. As stated previously, attorneys' fees incurred by the District for implementing the 2003 Settlement Agreement is disallowed.

Also, as indicated previously, the billing records in Exhibit C include time for legal work incurred in litigating claims other than the ones related to the 2003 Settlement Agreement. For this reason, Mr. Wedner has exercised his billing judgment and has reduced by half the number of hours listed in Exhibit C. In its motion, the District indicates that it paid Lozano Smith $12,516 for legal work done during this time period and requests reimbursement of one-half of this amount or $6,258. The Court finds that this is an appropriate reduction and awards $6,258.

      2. Stubbs & Leone

In support of its request for reimbursement of legal services provided by Stubbs & Leone, the District submits the declaration of Louis Leone, a principal of Stubbs & Leone.  Mr. Leone graduated from Pepperdine Law School in 1981 and is admitted to practice law in California state courts, California federal courts and the United States Supreme Court.  For more than twenty-five years, Mr. Leone has represented public schools, community college districts, municipalities and corporate clients and has tried over thirty jury trials regarding complex legal issues.  He is a consultant and lecturer and is a recognized expert in the fields of education law and public entity representation and has been identified as a "Super Lawyer" in these fields by Super Lawyers Magazine.

As Stubbs & Leone's lead attorney in the litigation of this case, Mr. Leone supervised the attorneys and paralegals who worked on it.  Mr. Leone declares that each attorney or paralegal who worked on this case made daily and weekly entries into the firm's time-keeping system, at or near the time of performing the service, that describe the services performed and the time expended in performing each task.  Exhibit B, attached to Mr. Leone's declaration, is a report from March 14, 2006, the date the firm was retained, through November 18, 2011, showing a description of services performed, the date of performance, the individual who performed the service, and the amount of time spent on each task.  The report shows that from March 14, 2006 through

13

November 18, 2011, legal professionals at Stubbs & Leone devoted a total of 522.75 hours to this case.

In its motion, the District indicates that Stubbs & Leone billed $54,808 during this time period and requests reimbursement of one-half this amount, or $27,404. The Court finds the one-half reduction sufficient to account for the fact that Stubbs & Leone defended claims other than those for breach of the 2003 Settlement Agreement, and prosecuted counter-claims against the Pedrazas. The Court awards $27,404.

The District also requests $9,950 in attorneys' fees for preparing this motion for damages, reviewing the opposition and preparing the reply. However, the Pedrazas have not filed an opposition and, thus, the District has not filed a reply. Katherine Alberts declares that she spent 16.8 hours preparing this motion for damages and anticipated that she would spend another twelve hours reviewing the opposition and drafting the reply. Ms. Alberts' present billing rate is $175 per hour. Therefore, the Court disallows $2,100 (twelve hours times $175) from the amount requested for preparing this motion. Thus, $7,850 is awarded for preparing this damages motion.

       C. Reasonable Rates

          1. Lozano Smith

The billing rates for the attorneys at Lozano Smith range from $190 to $275 per hour. The highest rates are for Mr. Wedner who billed $230 per hour in 2006, $250 per hour from September 1,

14

2006 through March 31, 2010 and $275 per hour from April 1, 2010 through September 1, 2010.  Exhibit E, attached to Mr. Wedner's declaration is a spreadsheet summarizing the hourly billing rates for each attorney at Lozano Smith.  Mr. Wedner declares that these rates "are well within the range normally and customarily charged, and received, by attorneys in the San Francisco geographic areas, having commensurate experience and expertise" as the Lozano Smith attorneys who worked on this case.  The Court is familiar with attorney billing rates in the San Francisco Bay Area and notes that the rates requested are well within the range of rates customarily charged.  Therefore, the Court finds that Lozano Smith's requested billing rates are reasonable.

        2. Stubbs & Leone

The billing rates for the three Stubbs & Leone associate attorneys who worked on this case are $150 per hour for March 14, 2006 through June 30, 2008; $165 per hour from July 1, 2008 through September 30, 2011; and $175 per hour from October 1, 2011 to present.  The billing rates for Mr. Leone, lead attorney, are $160 per hour from March 14, 2006 through February 29, 2007; $165 per hour from March 1, 2007 through June 30, 2008; and $175 per hour from July 1, 2008 through the present.  The rate for the paralegal who worked on this case is $90 per hour.  Leone Dec. ¶ 11.

Mr. Leone declares that he has knowledge of the market rates in Northern California for litigation involving the issues of

15

special education, civil rights and breach of contracts. Mr. Leone declares that, due to the financial condition of the public school system and school districts, such as the District here, the hourly billing rates of Stubbs & Leone's attorneys in this matter are well below the market rate of attorneys in the San Francisco Bay Area with commensurate experience and expertise. According to Mr. Leone, the rates charged in this case are also below the rates Stubbs & Leone charges its other clients and are below the hourly rate it has been awarded by California courts. Leone Dec. ¶ 11.

Again, the Court is familiar with attorney billing rates in the San Francisco Bay Area and notes that the rates requested by Stubbs & Leone are below the rates that are customarily charged. The Court finds that the rates requested by Stubbs & Leone are reasonable.

Therefore, with the deductions noted above, the Court finds that the attorneys' hours and rates requested by the District are reasonable and the Court grants in part its motion for summary judgment for damages in the amount of allowable attorneys' fees. Attorneys' fees are awarded as follows: $41,617 from January, 2006 through September, 2007; $33,662 from October, 2007 through October, 2011; and $7,850 for preparing the motion on damages. Thus, attorneys' fees are awarded in the amount of $83,129.

## CONCLUSION

For the foregoing reasons, the Court denies Ms. Pedraza's motion for recusal (docket no. 287), denies the requests in her

16

miscellaneous filings in docket numbers 264, 265 and 289 and grants in part the District's motion for summary judgment for damages on its counter-claims in the amount of $83,129.  The Clerk shall enter a separate judgment in favor of the District and against the Pedrazas in the amount of $83,129.  The District shall recover its costs of suit from the Pedrazas.

    IT IS SO ORDERED.

Dated: 3/26/2012

CLAUDIA WILKEN
United States District Judge

17